**MOTO METER GAUGE & EQUIPMENT CORPORATION v. E. A. LABORATORIES, Inc.**

No. 4816.

District Court, E. D. New York.

Feb. 8, 1932.

Howson & Howson, of New York City (Page S. Haselton and Hubert Howson, both of New York City, of counsel), for plaintiff,

Duell, Dunn & Anderson, of New York City (Holland S. Duell and Clifford E. Dunn, both of New York City, of counsel), for defendant.

GALSTON, District Judge.

This is a suit involving the alleged infringement of reissue patent No. 17,560, granted to R. O. Hood on January 7, 1930, on an application filed April 9, 1929. The original patent, No. 1,669,827, was issued May 15, 1928, on an application filed February 28, 1925.

The first twenty-eight claims of the reissue patent in suit are the same as in the original patent; claims 29 to 47 were added by the reissue.

Claims 16, 18, and 21, and claims 31 to 39, inclusive, are in issue.

The defenses are want of invention as to all those claims, and as to claims 33 and 34, in addition, that they are unenforceable against the defendant because of its intervening rights acquired by the manufacture and sale of its "Broadway" horns.

The invention relates to acoustic signaling devices, particularly to horns for automobiles. The sound-producing mechanism is disposed within a casing and comprises essentially a drum having two opposed diaphragms between which is the mechanism for vibrating them simultaneously.

The actuating mechanism includes an electro-magnet composed of two relatively flat laminated cores which may be carried directly upon the diaphragms. The magnet cores are adapted to be maintained normally in spaced relation and to be attracted toward each other when the coil of the magnet is energized and the core thereby is magnetized. A make and break circuit controller is provided to maintain the diaphragms in rapid vibration when the circuit through the energizing coil is otherwise completed. The make and break mechanism is governed by the movements of the diaphragm.

The specification recites: "The engagement and disengagement of the contact members may be controlled by relative vibration of the diaphragms. For this purpose, a screw 98 may be adjustably screw-threaded through the diaphragm 26 and also through plates 54 and 60 and may be locked in any set position by a check nut 100. Said screw is provided with a rod 102 of insulating materi-al in its end and said rod is adapted to be disposed to engage the spring member 66 and separate the contact members when the diaphragms have been moved inwardly a predetermined distance thereby to break the energizing circuit."

In respect to infringement, claims 16, 18, and 21 may be considered as a single group. Claim 16 may be taken as typical: "16. The combination of a pair of spaced and independently-vibratory diaphragms, electromagnetic means between the diaphragms to actuate them, and a circuit-controller for said means, and means operatively connecting said circuit controller to both diaphragms, whereby the diaphragms act conjointly to control the circuit controller."

It will be noted that the claim embraces two vibratory diaphragms.

Plaintiff's Exhibit No. 1, a specimen of the defendant's double diaphragm horn, embodies every element of this claim; and, if the claim is valid, it is infringed.

A number of United States and some foreign patents are cited against the claim.

That to Hopkins, No. 305,927, issued September 30, 1884, is for a telephone receiver. This patent discloses a diaphragm A and what the inventor calls an "auxiliary diaphragm G." It is stated that: "When changes occur in the current traversing the helix F, the changes effected thereby in the magnetism of the core E cause the alternate attraction and release of the diaphragm A, and a reciprocal attraction of the core, and a corresponding, although diminished, motion of the parts attached to the core, including the diaphragm G."

In this construction I find no circuit controller or current interrupter, such as is defined in the patent in suit.

Zigang patent, No. 415,990, issued November 26, 1889, is for an electric trumpet. The disclosure is of a magnet and single diaphragm and a circuit interrupter. In the respect that it shows but one diaphragm it differs from the combination of the three claims 16, 18, and 21.

Patent to Russell, No. 870,198, issued November 5, 1907, is for an electric horn. The device disclosed by this patent includes a diaphragm, an armature magnet, and an interrupter; but likewise fails as an anticipation of the three claims under discussion because it does not show a pair of spaced or opposed vibratory diaphragms.

Patent No. 1,157,292, to Bretz, issued October 19, 1915, is for an automobile horn.

This device ostensibly shows two diaphragms, but only one is sound-producing. It cannot for that reason be regarded as an anticipation of these three claims.

Patent No. 1,321,336, to C. J. Rohland, issued November 11, 1919, is for a sound producer. For the purposes of anticipation, I regard this as the closest of the defendant's references. It discloses a magnet armature designed to co-operate with the magnet, a pin fastened to the armature and extending between the two coils of the magnet, two diaphragms vibrated by the action of the pin, and an interrupter (in a modified form of the device) which is operated by the pin when the armature is attracted towards the magnet. The patentee says: "The interrupter illustrated comprises as its main parts two contact-arms connected respectively by conductors, 17 and 18, with the main conductors, 19 and 20 of the circuit in which the electromagnet 7 is connected, a suitable resistance coil being shown in shunt, at 21, for reducing sparking at the terminals of the interrupter. One of the contact arms extends past the other so as to engage the plunger 9 and be actuated by it. The device 16 operates in substantially the same manner as the corresponding devices employed in connection with electric bells and for analogous uses. Normally the two contact arms of the interrupter 16 are in engagement. When the magnet is energized these contacts are separated by the motion of the plunger and hence the circuit of the magnet 7 is interrupted. This action is, of course, rapidly repeated with the result that there is the usual rapid make and break of the circuit of the magnet and a corresponding movement of its armature." Just how the plunger 9 of this Rohland device operates the interrupter 16 is not clearly disclosed either in the specification or by the drawings. Claims 16 and 21 may be distinguished from the Rohland disclosure in that they recite that the two diaphragms act conjointly to control the current interrupter. Claim 18, inferentially at least, must be similarly limited. The Rohland disclosure falls short in that the vibration of the diaphragms apparently plays no part in the control of the interrupter.

Letters patent No. 1,404,152 to C. F. Kettering, issued January 17, 1922, relates to a fuel supply system—an art totally non-analogous to that of the patent in suit. It is evident that this patent does not in the least suggest a sound-producing mechanism, and for this reason may be disregarded.

Letters patent No. 1,608,218 granted to Kongsted November 23, 1926, is for a signal horn, but it was not applied for until June 4, 1925, and is, therefore, subsequent to the filing date of the patent in suit. Hence it cannot be considered as a reference against claims 16, 18, and 21, for those were claims of the original patent.

Favre-Bulle, British patent No. 160,244 of 1921, is for an improvement in diaphragm and like vibrators operated by alternating electric current. In the arrangement found in this patent, the diaphragms are not free to vibrate independently. In fact from the manner in which the device of this patent is to be used it may be doubted whether the part a of the box is really an acoustic diaphragm such as is the cover part b. Moreover, the device is to be used with alternating current, and therefore includes no interrupter or circuit control device.

French patent No. 478,106, to Chollet & Garnier, of November 24, 1915, is for an electric horn. This patent, like several of the others of the prior art heretofore considered, shows but one diaphragm, and therefore does not meet the limitations of the three claims, 16, 18, and 21.

It appears in consequence that none of these patents discloses the combination of claims 16, 18, and 21; but the defendant urges that every element of the claims is found in the prior art, and hence that no invention was involved in arriving at the combination of the patent in suit. Reliance is had on the expression of our Circuit Court of Appeals in Rosenberg v. Carr Fastener Co., 51 F.(2d) 1014, 1019, in which it was said: "Very recent decisions of the Supreme Court indicate that a substantial step beyond the prior art must be taken in order to support a valid patent. Here the advance over the invention of 1913, if it be thought to have occurred, was altogether too slight and obvious. DeForest Radio Co. v. General Electric Co., 283 U. S. 664, 51 S. Ct. 563, 75 L. Ed. 1339, decided May 25, 1931; Carbice Corporation v. American Patents Development Corporation, 283 U. S. 420, 51 S. Ct. 496, 75 L. Ed. 1153, decided May 18, 1931; American Fruit Growers, Inc., v. Brogdex Co., 283 U. S. 1, 51 S. Ct. 328, 75 L. Ed. 801; Smith v. Springdale Amusement Park, Ltd., 283 U. S. 121, 51 S. Ct. 368, 75 L. Ed. 878."

But the foregoing is no authority for holding that a new combination producing an old result in a new way or a new result by means of old elements does not constitute invention; and the defendant certainly begs the

question in affirming that the advance made by Hood was slight and obvious.

I think the inventor contrived a simple compact device well adapted to the specific purpose for which it is intended. It was not a great invention in the sense that an art was revolutionized, nevertheless he did succeed in finding a device to meet a commercial need. It is not merely a sound-making device, but one which, by its assembly and by virtue of the relation of its parts, emits a distinctive and pleasing signal. In contriving it there was a contribution to the art, perhaps slight, but which was meritorious and certainly not "obvious." In this view of the case one cannot ignore the fidelity with which the defendant has copied the device.

The second branch of the suit deals with claims 31 to 39, inclusive. They appear for the first time in the reissue patent. These claims are asserted to be infringed by defendant's double diaphragm horn (Plaintiff's Exhibit No. 1), and claims 33 and 34 also by defendant's single diaphragm horn (Plaintiff's Exhibit No. 2).

Claim 31 may be taken as a typical claim, and reads as follows: "An acoustical signaling device comprising a pair of opposed housing members forming an enclosure, of which at least one is a sheet metal diaphragm having a flexible annular portion and an inflexible central portion, electromagnetic means in the enclosure including an armature mounted rigidly on the inflexible central portion of the diaphragm, and interrupter mechanism within the enclosure including an interrupter element mounted on the central inflexible portion of the diaphragm."

This claim and similar claims of the group, if valid, are infringed by Plaintiff's Exhibit No. 1. There seems to be no contention to the contrary. But it is urged that these claims lack invention, and as against them the same prior art is relied on as was considered in connection with claims 16, 18, and 21. Again I find that no single patent of the prior art sets forth the combination of the claims; and I am of opinion that it did require invention, even though all the parts are found in different patents, to effect the specific combination defined in these claims.

In some respects, indeed, this second group of claims is of narrower scope than the first group. For example, claim 31 recites: "A pair of opposed housing members forming an enclosure, of which at least one is a sheet metal diaphragm having a flexible annular portion and an inflexible central por-

tion." This construction is shown neither in Zigang, Russell, nor Bretz. In the Rohland device, the armature and the interrupter parts are mounted independently of the diaphragms and are not connected thereto.

The claim also calls for "an interrupter element mounted on the central inflexible portion of the diaphragm."

The interrupter shown in the Zigang patent is the contact b mounted not on a central inflexible portion of the diaphragm but near the outside edge thereof. This obviously brings about a difference in operation.

As to claims 35 to 38, inclusive, they set forth a limited construction involving in the traffic signal device a sheet metal diaphragm, reinforcing plates mounted on the opposite sides and centrally thereof, affixed rigidly to a plurality of spaced points, clamping the diaphragm to form a sound-producing member having a rigid center portion and an annular flexible portion.

Such a construction would seem to involve but the minimum of invention were it not for the advantage that results from the use of the spaced fastenings. It is said that the construction avoids rattling noises such as would occur with a single central fastening, shown in Russell.

Moreover, it would appear that the method of fastening guards against the rotation of the armature parts. Such rotation would throw the armature and the interrupter out of proper adjustment. There is no such construction shown in Russell, nor in either Zigang or Kettering, which are urged by the defendant as pertinent prior art in respect to these claims.

There remains for consideration an exceedingly interesting question. It is the matter of intervening rights, as effecting claims 33 and 34, arising out of the manufacture by the defendant of what was called its "Broadway Horn."

It will suffice to discuss claim 33. It reads as follows: "33. In combination, a pair of casing members at least one of which is formed to constitute a vibratable diaphragm, means securing the marginal portions thereof together to provide a complete enclosure, means including an electromagnet and complemental armature fixed upon the respective members within said enclosure at the centers thereof and arranged to effect sound producing flexure of the diaphragm, and an interiorly disposed interrupter located outside the magnet and comprising a pair of contacts relatively movable in substantially the direc-

tion of movement of the diaphragm, and a member thrust inward by inward movement of the diaphragm to separate said contacts and thereby to interrupt the current upon relative approach of the members, said interrupter being confined and protected in said enclosure."

While the plaintiff raises no question that Plaintiff's Exhibit 3, the Broadway horn, falls within the limitations of claims 33 and 34, it does vigorously assert that the defendant acquired no intervening rights because the facts in the case show no estoppel.

It appears that the defendant began the manufacture of this horn in June or July of 1926 and continued to manufacture the horn for three years. During that time several thousand of the horns were made. The first commercial output was in January, 1927. The testimony of the witnesses Carbonaro and Robertson is conclusive on this subject supported as it is by the Carbonaro drawing, various catalogue pages, a service book, and the testimony of Miss Robiolle, Maguire, and Aufiero.

It is urged by the plaintiff that the real question involved is whether the defendant was led by the terms of the original patent granted May 15, 1928 to embark on the manufacture and sale of these infringing articles prior to the application for a reissue. Plaintiff argues that, assuming defendant's proofs as to the manufacture and distribution of the Broadway horn to have been established, yet, since such manufacture and distribution preceded the issuance of the original letters patent in suit, it could not have been induced by the patent. So much must be conceded; but does that dispose of the question of estoppel? Should one disregard the circumstance that the failure of the original patent to claim the single diaphragm construction made it possible for the defendant to continue the manufacture and sale of its Broadway horn? There was no claim in the original patent, and indeed nothing in the patent, which served as a warning to the defendant to desist from the manufacture of such a horn. On the contrary, failure of the patent to include such bar was in effect an invitation to the defendant to continue its sales.

There seems to be no question under the authorities that, if the defendant had originated its production of the Broadway horn some time after the issuance of the original patent and before the filing of the application for the reissue patent, intervening rights would have arisen. Can it be said with force and conviction that, because such origination

preceded the issuance of the original patent, the defendant acquired no such rights? The essence of the intervening rights arises out of an estoppel—and because of some act done by the defendant. To create an estoppel it would in principle seem sufficient, if any act of the patentee led the defendant, between the issuance of the patent and the application for the reissue, to a course of conduct inconsistent with the claims of the later patent, even though such conduct was but a continuance of that which the defendant had done prior to the original issue.

Plaintiff quotes from the syllabus of Autopiano Co. v. American Player Action Co. (C. C. A.) 222 F. 276, 282, to argue that the manufacture and sale must have "commenced" between the date of the first reissue and the second reissue patent disclosed in that suit. It is true that Judge Lacombe wrote: "Before the second reissue was granted, however, and while the public was advised that the rights which complainant claimed were those only announced to the public in the first reissue, defendant began the manufacture of player piano actions with automatic regulation of the register between note sheet and tracker bar."

But such an opinion does not justify the inference that, if the act of the patentee had led the defendant to continue what he had been doing, an estoppel would not have arisen.

Both parties on the general subject of intervening rights refer to Keller v. Adams, 264 U. S. 314, 44 S. Ct. 356, 357, 68 L. Ed. 705, but certainly the case affords no authority for the disposition of the question presented here. At most the court stated as to the specific facts therein presented—which facts are not at all the facts herein—that: "The extent of the operation of the estoppel creating intervening rights in such a case presents a question not free from difficulty."

Other references are made to cases involving a discussion of estoppel arising under reissue patents, but none of them sets forth a set of facts such as is presented herein.

In this connection I may state that I have read and considered Ashland Fire Brick Co., Inc., v. General Refractories Co. (C. C. A.) 27 F.(2d) 744; Otis Elevator Co. v. Atlantic Co. (C. C. A.) 47 F.(2d) 545. Mahn v. Harwood, 112 U. S. 354, 5 S. Ct. 174, 6 S. Ct. 451, 28 L. Ed. 665; Parker Co. v. Yale Co., 123 U. S. 87, 8 S. Ct. 38, 31 L. Ed. 100; and Topliff v. Topliff, 145 U. S. 156, 12 S. Ct. 825, 36 L. Ed. 658; are helpful only on the question of laches in respect to reissue pat-

ents. That particular phase of the question is not involved, for the application for reissue was filed within eleven months from the grant of the original patent.

From the foregoing, I conclude that the plaintiff is estopped to assert that the Broadway horn of the defendant infringes claims 33 and 34.

In other respects, however, plaintiff may have a decree, as indicated in this opinion.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.