## SONTAG CHAIN STORES CO., LTD. *v.* NATIONAL NUT COMPANY OF CALIFORNIA.

No. 671.   Argued April 24, 1940.—Decided May 20, 1940.

*Mr. Guy A. Gladson,* with whom *Messrs. Franklin M. Warden* and *Arthur D. Welton, Jr.* were on the brief, for petitioner.

*Mr. Hugh N. Orr,* with whom *Mr. Charles S. Evans* was on the brief, for respondent.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

The Circuit Court of Appeals declared respondent's reissue patent No. 20,024, for a nut treating apparatus, valid and infringed by petitioner's use of the accused machine, and rejected the defense of intervening rights. The record requires us to consider what effect an enlarged inclusive reissue claim has upon the use of a machine manufactured and operated after grant of the original patent without infringing it, but which does come within the enlargement.

Kohler's patent—No. 1,958,409—with four narrow claims, issued May 15, 1934.

Petitioner procured and began to use the machine here accused about April 1, 1935. It first obtained actual knowledge of the original patent October 8, 1935 when notice of infringement was received. Nothing shows earlier knowledge by the manufacturer who began to make and sell like machines not later than August 1934.

By suit filed in the District Court, October 19, 1935, respondent charged petitioner with infringing the original patent, and asked appropriate relief. Infringement was denied by answer, November 22, 1935.

January 15, 1936 respondent applied for and on June 30, 1936 obtained a reissue patent—No. 20,024—with seventeen claims. The first four were identical with the original ones; thirteen of broader scope cover petitioner's machine. Respondent was moved to obtain the reissue by petitioner's use of the accused machine.

January 26, 1937 respondent began another proceeding charging infringement of the enlarged claims. Petitioner's answer relied upon intervening rights acquired through public use without violating the original patent; also, invalidity of the reissue because of laches. The two

suits were consolidated; claims one to four were not relied on. A single decree went for petitioner. Both bills were dismissed.

Infringement of respondent's design patent No. 89,-347—February 28, 1933—was alleged, but both courts declared it not infringed. No point in respect of it is before us.

The District Court held—"That with respect to Kohler Reissue Letters Patent No. 20,024 in suit, this defendant and those in privity with it, including the manufacturer of the machine in question, acquired intervening rights which in equity plantiff may not now disturb." The Circuit Court of Appeals reversed and directed a remand. 107 F. 2d 318.

The cause is here by certiorari. Petitioner asserts the reissue patent is void because of laches; also that by reason of acquired intervening rights, use of the accused machine may continue.

The provision concerning reissues in the present Patent Act, § 4916 Revised Statutes as amended by Act May 24, 1928, c. 730, 45 Stat. 732; U. S. C. Title 35, § 64, is copied in the margin.[1] It derives through the Acts July 3,

---

[1] "Whenever any patent is wholly or partly inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a patent for the same invention, and in accordance with the corrected specification, to be reissued to the patentee or to his assigns or legal representatives, for the unexpired part of the term of the original patent. Such surrender shall take effect upon the issue of the reissued patent, but in so far as the claims of the original and reissued patents are identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent to the extent that its claims are identical with the original patent shall constitute

1832, c. 162, § 3, 4 Stat. 559; July 4, 1836, c. 357, § 13, 5 Stat. 117, 122; March 3, 1837, c. 45, § 5, 5 Stat. 191, 192; July 8, 1870, c. 230, § 53, 16 Stat. 198, 205.

The reissue provision, Act 1832, was supplanted without change presently important by the corresponding one in the 1836 Act. This was substantially reënacted in 1870. Modifications by the 1928 Act are not important. here. *Stimpson* v. *West Chester Railroad Co.*, (1846) 4 How. 380, 402; *Parker & Whipple Co.* v. *Yale Clock Co.*, (1887) 123 U. S. 87, 96; Walker on Patents, Deller's edition (1937), Vol. 2, p. 1342; Robinson on Patents (1890) Vol. 2, § 653 *et seq.*

These provisions have often been before the courts and there are sharply differing views concerning them. Some of the pertinent cases are noted below.[2]

---

a continuation thereof and have effect continuously from the date of the original patent. The commissioner may, in his discretion, cause several patents to be issued for distinct and separate parts of the thing patented, upon demand of the applicant, and upon payment of the required fee for a reissue for each of such reissued letters patent. The specifications and claims in every such case shall be subject to revision and restriction in the same manner as original applications are. Every patent so reissued, together with the corrected specifications, shall have the same effect and operation in law, on the trial of all actions for causes thereafter arising, as if the same had been originally filed in such corrected form; but no new matter shall be introduced into the specification, nor in case of a machine patent shall the model or drawings be amended, except each by the other; but when there is neither model nor drawing, amendments may be made upon proof satisfactory to the commissioner that such new matter or amendment was a part of the original invention, and was omitted from the specification by inadvertence, accident, or mistake, as aforesaid."

[2] *Stimpson* v. *West Chester Railroad Co.* (1846) 4 How. 380; *Battin* v. *Taggert,* (1854) 17 How. 74; *Miller* v. *Brass Co.,* (1881) 104 U. S. 350; *Mahn* v. *Harwood,* (1884) 112 U. S. 354; *Coon* v. *Wilson,* (1885) 113 U. S. 268; *Wollensak* v. *Reiher,* (1885) 115 U. S. 96; *White* v. *Dunbar,* (1886) 119 U. S. 47; *Newton* v. *Furst & Bradley Co.,*

The Circuit Court of Appeals after holding the enlarged reissue claims valid and infringed further declared—"In the instant case there was admittedly no knowledge of or reliance on the scope of plaintiff's patent, and no facts creating an estoppel. Furthermore, defendant has not shown a two-years user of the infringing patent. The defense of intervening rights is denied."

For present purposes we assume, without deciding, correctness of the conclusion that the reissue patent was valid and infringed, and upon that assumption, we come to consider the effect of the enlarged claims upon petitioner's machine, lawfully manufactured and operated prior to their inception. There is nothing to show dishonesty, bad faith, or deceptive intention upon petitioner's part.

Counsel for respondent insist the denial of intervening rights finds adequate support in *Stimpson* v. *West Chester Railroad Co., supra; Battin* v. *Taggert, supra; White* v. *Dunbar, supra; Topliff* v. *Topliff, supra; Abercrombie & Fitch Co.* v. *Baldwin, supra.* The first two are in point; but when considered in connection with later opinions are not decisive of the present issue. The other cases relied upon are not especially helpful.

(1886) 119 U. S. 373; *Ives* v. *Sargent,* (1887) 119 U. S. 652; *Parker & Whipple Co.* v. *Yale Clock Co.,* (1887) 123 U. S. 87; *Electric Gas Co.* v. *Boston Electric Co.,* (1891) 139 U. S. 481; *Topliff* v. *Topliff,* (1892) 145 U. S. 156; *Leggett* v. *Standard Oil Co.,* (1893) 149 U. S. 287;*Dunham* v. *Dennison Manufacturing Co.,* (1894) 154 U. S. 103; *Abercrombie & Fitch Co.* v. *Baldwin,* (1917) 245 U. S. 198; *Keller* v. *Adams-Campbell Co.,* (1924) 264 U. S. 314, and cases there cited; *Altoona Theatres* v. *Tri-Ergon Corp.,* (1935) 294 U. S. 477; *Wooster* v. *Handy,* (1884) 21 F. 51; *Ashley* v. *Samuel C. Tatum Co.,* (1917) 240 F. 979; *General Refractories Co.* v. *Ashland Fire Brick Co.,* (1926) 15 F. 2d 215, reversed on appeal (1928) 27 F. 2d 744; *Christman* v. *New York Air Brake Co.,* (1928) 1 F. Supp. 211; *Moto Meter Gauge & Equipment Corp.* v. *E. A. Laboratories,* (1932) 55 F. 2d 936.

The Patent Act of 1832 was a response to *Grant* v. *Raymond*, (Feb. 23, 1832) 6 Pet. 218, 242, 243–244. The opinion there (Chief Justice Marshall) affirmed the power of the Secretary to grant an application dated April 20, 1825 for reissue of a patent dated August 11, 1821 although not expressly authorized so to do, upon the ground that this was necessary in order to effect the purposes of the Patent Act by securing to inventors full benefit of their discoveries through "faithful execution of the solemn promise made by the United States." The Court said—

"An objection much relied on is, that after the invention has been brought into general use, those skilled in the art or science with which it is connected, perceiving the variance between the specification and the machine, and availing themselves of it, may have constructed, sold and used the machine without infringing the legal rights of the patentee, or incurring the penalties of the law. The new patent would retro-act on them, and expose them to penalties to which they were not liable when the act was committed."

"This objection is more formidable in appearance than in reality. It is not probable that the defect in the specification can be so apparent as to be perceived by any but those who examine it for the purpose of pirating the invention. They are not entitled to much favour. But the answer to the objection is, that this defence is not made in this case; and the opinion of the circuit court does not go so far as to say that such a defence would not be successful. That question is not before the court, and is not involved in the opinion we are considering. The defence when true in fact may be sufficient in law, notwithstanding the validity of the new patent."

Under the two year rule of *Miller* v. *Brass Co.*, (1881) *supra,* note 2, a reissue patent granted in circumstances

like those disclosed by the report of Grant's case, now would be declared invalid.

*Stimpson* v. *West Chester Railroad Co.*, (1846) *supra*, note 2, involved infringement of a reissue, granted in 1835, of an original patent dated in 1831. The trial judge charged the jury—

"It clearly appears that the defendants constructed their railroad with the plaintiff's curves in 1834, one year or more before the plaintiff's application for his renewed patent; consequently, they may continue its use without liability to the plaintiff."

This was declared in conflict with the reissue provision Act of 1832 and the corresponding one in the 1836 Act. The two are declared substantially alike. The Court said—
"It is plain that no prior use of the defective patent can authorize the use of the invention after the emanation of the renewed patent under the above section. To give to the patentee the fruits of his invention was the object of the provision; and this object would be defeated, if a right could be founded on a use subsequent to the original patent and prior to the renewed one. . . . Now any person using an invention protected by a renewed patent subsequently to the date of this act is guilty of an infringement, however long he may have used the same after the date of the defective and surrendered patent."

*Battin* v. *Taggert*, (1854) *supra*, note 2, reaffirmed *Stimpson* v. *West Chester R. Co.*, and disapproved the following instruction to the jury—"That a description, by the applicant, for a patent of a machine, or a part of a machine, in his specification, unaccompanied by notice that he has rights in it as inventor, or that he desires to secure title to it as a patentee, is a dedication of it to the public. That such a dedication cannot be revoked, after the machine has passed into public use, either by surrender and reissue, or otherwise."

The Court said—"Whether the defect be in the specifications or in the claim, under the 13th section [Act 1836] above cited, the patentee may surrender his patent, and, by an amended specification or claim, cure the defect. The reissued patent must be for the same invention, substantially, though it be described in terms more precise and accurate than in the first patent. Under such circumstances, a new and different invention cannot be claimed. But where the specification or claim is made so vaguely as to be inoperative and invalid, yet an amendment may give to it validity, and protect the rights of the patentee against all subsequent infringements."

"So strongly was this remedy of the patent recommended, by a sense of justice and of policy, that this court, in the case of Grant v. Raymond, 6 Pet. 218, sustained a reissued and corrected patent, before any legislative provision was made on the subject."

"How much stronger is a case under the statute, which secures the rights of the patentee by a surrender, and declares the effect of the reissued and corrected patent? *By the defects provided for in the statute, nothing passes to the public from the specifications or claims, within the scope of the patentee's invention. And this may be ascertained by the language he uses.*" [Italics supplied.]

*Miller* v. *Brass Co.*, (1881) *supra*, note 2, departing from the view expressed in *Battin* v. *Taggert* concerning omissions in claims, declared—

"But it must be remembered that the claim of a specific device or combination, and an omission to claim other devices or combinations apparent on the face of the patent, are, in law, a dedication to the public of that which is not claimed. It is a declaration that that which is not claimed is either not the patentee's invention, or, if his, he dedicates it to the public. This legal effect of the patent cannot be revoked unless the patentee sur-

renders it and proves that the specification was framed by real inadvertence, accident, or mistake, without any fraudulent or deceptive intention on his part; and this should be done with all due diligence and speed. Any unnecessary laches or delay in a matter thus apparent on the record affects the right to alter or reissue the patent for such cause. If two years' public enjoyment of an invention with the consent and allowance of the inventor is evidence of abandonment, and a bar to an application for a patent, a public disclaimer in the patent itself should be construed equally favorable to the public. Nothing but a clear mistake, or inadvertence, and a speedy application for its correction, is admissible when it is sought merely to enlarge the claim."

"We think it clear that it was not the special purpose of the legislation on this subject to authorize the surrender of patents for the purpose of reissuing them with broader and more comprehensive claims, although, under the general terms of the law, such a reissue may be made where it clearly appears that an actual mistake has inadvertently been made. But by a curious misapplication of the law it has come to be principally resorted to for the purpose of enlarging and expanding patent claims. And the evils which have grown from the practice have assumed large proportions. Patents have been so expanded and idealized, years after their first issue, that hundreds and thousands of mechanics and manufacturers, who had just reason to suppose that the field of action was open, have been obliged to discontinue their employments, or to pay an enormous tax for continuing them."

*Mahn* v. *Harwood* (1884) *supra*, note 2, reaffirms *Miller* v. *Brass Company,* and declares—

"The public is notified and informed by the most solemn act on the part of the patentee, that his claim to invention is for such and such an element or combina-

tion, and for nothing more. Of course, what is not claimed is public property. The presumption is, and such is generally the fact, that what is not claimed was not invented by the patentee, but was known and used before he made his invention. But, whether so or not, his own act has made it public property if it was not so before. The patent itself, as soon as it is issued, is the evidence of this. The public has the undoubted right to use, and it is to be presumed does use, what is not specifically claimed in the patent. Every day that passes after the issue of the patent adds to the strength of this right, and increases the barrier against subsequent expansion of the claim by reissue under a pretence of inadvertence and mistake."

"The truth is (as was shown in *Miller* v. *The Brass Company*), that this class of cases, namely, reissues for the purpose of enlarging and expanding the claim of a patent, was not comprised within the literal terms of the law which created the power to reissue patents. But since the purpose of the statute undoubtedly was to provide that kind of relief which courts of equity have always given in cases of clear accident and mistake in the drawing up of written instruments, it may fairly be inferred that a mistake in a patent whereby the claim is made too narrow, is within the equity, if not within the words, of the statute. Yet no court of equity, considering all the interests involved, would ever grant relief in such a case without due diligence and promptness on the part of the patentee in seeking to have the error corrected. It is just one of those cases in which laches and unnecessary delay would be held to be a bar to such relief. And in extending the equity of the statute so as to embrace the case, the courts should not overlook or disregard the conditions on which alone courts of equity would take any action, and also on which alone the

Commissioner of Patents has any power to grant a reissue."

See, *Clements* v. *Odorless Apparatus Co.,* (1884) 109 U. S. 641, 649-650; *Turner & Seymour Co.* v. *Dover Stamping Co.,* (1884) 111 U. S. 319, 326-327; *Coon* v. *Wilson,* (1885) 113 U. S. 268, 277.

*Topliff* v. *Topliff,* (1892) *supra,* note 2, recognizes that a valid reissue patent with enlarged claims may be granted, when the original is inoperative, under condition—

"Second. That due diligence must be exercised in discovering the mistake in the original patent, and that, if it be sought for the purpose of enlarging the claim, the lapse of two years will ordinarily, though not always, be treated as evidence of an abandonment of the new matter to the public to the same extent that a failure by the inventor to apply for a patent within two years from the public use or sale of his invention is regarded by the statute as conclusive evidence of an abandonment of the patent to the public."

In *Dunham* v. *Dennison Manufacturing Co.,* (1894) *supra,* note 2, infringement was alleged of a reissue, dated June 10, 1884, of an original patent issued May 8, 1883, for "a new and improved combined tag and envelope." This Court said—

"The patent of May 8, 1883, was expressly and distinctly, both in the specification and in the claims, limited to an envelope, with an opening at one end; with a flap, attached to the envelope at that end, of sufficient size to cover the whole of that side of the envelope in which the opening was; . . . The patentee thus gave the public to understand that an envelope, the flap of which did not cover its whole length, would not come within his patent, and might rightfully be made by any one. After the defendant had made envelopes with a short flap of

semi-circular shape and covering little more than the opening of the envelope, (which, it is admitted, did not infringe the plaintiff's patent as originally issued,) the plaintiff obtained a reissue, enlarging the claims, and altering the specification throughout, so as to include an envelope with a flap of any size or shape, and to make the invention consist, not, as in the leading words of the description in the original patent, of 'an envelope with an end flap covering its side,' but in 'a tag provided with means for attaching it to the merchandise, and with an envelope or pocket to receive a bill or invoice of the merchandise.' The words of the description in the original patent were neither technical nor complicated; but they were of the simplest kind, and their meaning and scope could not have been misunderstood by any one who read them with the slightest attention, least of all by the patentee. To uphold such a reissue under such circumstances would be to grant a new and distinct privilege to the patentee at the expense of innnocent parties, and would be inconsistent with the whole course of recent decisions in this court."

*Abercrombie & Fitch Co.* v. *Baldwin,* (1917) *supra,* note 2, declared a reissue claim was not an enlargement and held the defendant guilty of violating the patent as originally written.

In *Keller* v. *Adams-Campbell Co.,* (1924) *supra,* note 2, certiorari was dismissed. The Chief Justice pointed out that the question of intervening rights, while not free from difficulties, was not before the Court. It decided nothing presently important.

The opinions reviewed above will suffice to indicate the progressive efforts of the court to meet problems incident to our rapidly expanding patent system. From a small State Department bureau in 1836, the Patent Office has expanded until in 1939 over 40,000 patents were granted—in 1838, 515 were granted. Although of immense impor-

tance, the system has become exceedingly complex. Questions relative to reissued patents have long been vexatious to those immediately concerned with administration of the patent laws.

*Miller* v. *Brass Company, supra,* pointed out that "the evils which have grown from the practice [reissues] have assumed large proportions. Patents have been so expanded and idealized, years after their first issue, that hundreds and thousands of mechanics and manufacturers, who had just reason to suppose that the field of action was open, have been obliged to discontinue their employments, or to pay an enormous tax for continuing them."

It is now accepted doctrine that "the claim of a specific device or combination, and an omission to claim other devices or combinations apparent on the face of the patent, are, in law, a dedication to the public of that which is not claimed." "This legal effect of the patent cannot be revoked unless the patentee surrenders it and proves that the specification was framed by real inadvertence, accident, or mistake, . . ." Also, that a reissue with enlarged claims, not applied for within the two years after the original, is void in the absence of extraordinary exculpating circumstances.

In the case under consideration the patentee might have included in the application for the original patent, claims broad enough to embrace petitioner's accused machine, but did not. This "gave the public to understand" that whatever was not claimed "did not come within his patent and might rightfully be made by anyone." The enlarged claims were presented with knowledge of the accused machine and definite purpose to include it.

Recapture within two years of what a patentee dedicates to the public through omission is permissible under specified conditions, but not, we think, "at the expense of

innocent parties." Otherwise, the door is open for gross injustice to alert inventors and baffling uncertainty will hinder orderly development of useful arts.

The District Court properly ruled that petitioner had "acquired intervening rights which in equity plaintiff [respondent here] might not now disturb."

In *Ashland Fire Brick Co.* v. *General Refractories Co.,* (1928) 27 F. 2d 744, 745–746, the matter of "Intervening Rights" was lucidly discussed. The opinion states the case thus—

"This is the usual suit for infringement, based upon reissue patent No. 15,889, August 12, 1924, to Tackett, for a brick machine. The defense chiefly relied upon in the court below and here is that, between the date of the original issue and the application for the broadened reissue, the defendant had built and begun to operate its machines in a form which was not covered by the original patent, even though it were by the reissue, and that the defendant had thus acquired such a right, intervening with reference to the original and reissue, as to make it inequitable to enforce against it the later and broader monopoly."

And it concluded—

"Because the claims of the original patent were limited as to the form of conveyor, and because after the issue of the original patent and with knowledge of it and expressly appreciating its limited character, indeed, being governed therein by the advice of patent counsel, the defendant built a noninfringing brick machine, and still before the reissue application another one, at a substantial expense, and put them into commercial use on a large scale by extensively selling their product, and thus made them substantially material to its manufacturing business, the defendant thereby acquired at least a right

to continue to use these two machines as if it held a license therefor under the reissued patent."

We think this conclusion was right and appropriate in the circumstance presented.

In the instant case the accused machine went into operation when the owner had no actual knowledge of the original patent; but that circumstance we think ought not to defeat the defense based upon intervening rights. All patents must "be recorded, together with the specifications, in the Patent Office in books to be kept for that purpose." U. S. C. Title 35, § 39. Constructive notice of their existence goes thus to all the world. *Boyden* v. *Burke*, (1852) 14 How. 575, 582; *Wine Ry. Appliance Co.* v. *Enterprise Ry. Equipment Co.*, (1936) 297 U. S. 387, 393; Walker on Patents, Deller's edition (1937) Vol. 3, p. 2176. In consequence the owner of the machine here accused operated it with implied knowledge of the original patent and may justly claim whatever privileges would follow actual knowledge.

*Grant* v. *Raymond, supra,* speaks disparagingly of one who having obtained knowledge of an invention from a patent thereafter appropriates what might have been claimed but was not. In the different conditions of today that observation would not be appropriate. We cannot conclude that one so circumstanced occupies a position superior to an honest inventor or user who has acted with implied but no actual knowledge of a recorded patent. "The purpose of the statute undoubtedly was to provide that kind of relief which courts of equity have always given in cases of clear accident and mistake in the drawing up of written instruments," and these courts are always tender of rights claimed by innocent parties. "A sense of justice and of policy" shelters them.

The possibility of defeating a charge of infringement by establishing intervening rights is adumbrated in *Grant*

v. *Raymond, supra,* "The defence when true in fact may be sufficient in law, notwithstanding the validity of the new patent."

The challenged judgment must be reversed with a remand to the Circuit Court of Appeals for further proceedings consistent with this opinion.

*Reversed.*