**BRUNSWICK CORPORATION, a Delaware corporation, Plaintiff,**

v.

**RIEGEL TEXTILE CORPORATION, a Delaware corporation, Defendant.**

**No. 82 C 4374.**

United States District Court, N.D. Illinois, E.D.

Dec. 19, 1983.

Ned Robertson, Erwin C. Heininger, Mayer, Brown & Platt, Chicago, Ill., John G. Heimovicks, Skokie, Ill., for plaintiff.

C. Lee Cook, Jr., Pamela J. Kempin, Alan I. Greene, Chadwell & Kayser, Ltd., Chicago, Ill., J.D. Fleming, Jr., Bennett L. Kight, John W. Bonds, Jr., Sutherland, Asbill & Brennan, Atlanta, Ga., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge.

Plaintiff Brunswick Corporation ("Brunswick") sued Riegel Textile Corporation ("Riegel") pursuant to federal antitrust statutes as well as state law. Jurisdiction is asserted pursuant to 28 U.S.C. § 1337 and the pendent jurisdiction doctrine. Presently before the Court is Riegel's motion to dismiss Counts III, IV and V pursuant to Fed.R.Civ.P. 12(b)(6). Riegel also seeks dismissal of the state law claims set forth in Counts I, II and VI. For reasons set forth below, Riegel's motion is granted.

█ In considering motions to dismiss, we take as true all material allegations of fact contained in Brunswick's complaint.

A complaint should not be dismissed, moreover, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### Facts

Brunswick claims that in 1967, it developed a blending process which permitted metal fibers to be combined with conventional fibers to make an antistatic yarn for static-free garments. In 1968, Brunswick and Riegel entered into an agreement and confidential relationship whereby Brunswick agreed to disclose its blending process to Riegel, and to refrain from disclosing the process to any other textile company for a year after Riegel mastered the blending process. Riegel agreed to use Brunswick metal fibers, and not to disclose the process to others. Brunswick, through an employee, filed a patent application which included a group of claims relating to its blending process in 1970. In that same year, Brunswick alleges that two Riegel employees fraudulently filed a patent application concerning the blending process; a patent was issued to the Riegel employees in 1972, and Brunswick asserts that the trade secret status of its blending process was thereby destroyed.

In 1975, the Patent Office declared a patent interference proceeding to determine the priority of invention between Brunswick's employee and Riegel's employees.[1] Brunswick claims that it initially believed that Riegel's patents might have been based upon an earlier independent

---

1. During the pendency of this litigation, the Board of Patent Interferences issued a decision concerning the priority of invention of the blending process. The decision, issued November 4, 1983, is subject to appeal within sixty days. The Board declined to decide whether Riegel's employees obtained their patent fraudulently, but it did hold that Brunswick's employee established a date of invention prior to his benefit date for subject matter in 1, 2, 4 and 7 claims Brunswick's employee, however, was found to have no right to make claim 16 (Count

I). Riegel's employee did not, moreover, establish conception or a reduction to practice of certain counts.

In 1972, Riegel's employees once again filed a patent application containing claims of invention concerning antistatic yarn and fabrics. While the patent issued in 1974, a patent interference proceeding concerning the claims in the second patent was dissolved in 1977, holding that all claims in the second patent were unpatentable.

invention. In 1977, however, during the course of the Patent Office interference proceedings, Brunswick asserts it learned that Riegel's procurement of the patent was fraudulent.

Count I avers that the aforementioned acts by Riegel constitute malicious interference with prospective economic advantage, while Count II claims that Riegel's patent application and involvement in the patent interference proceeding are abuse of process. In Count III, Brunswick asserts that the patents were fraudulently obtained to restrain trade, as part of a combination and conspiracy, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Count IV claims a conspiracy to monopolize, an attempt to monopolize and an unlawful monopolization, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Count V asserts that Riegel's allegedly unlawful acquisition of Brunswick's blending process constitutes an acquisition of assets in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18. Finally, Count VI asserts a claim for breach of contract. Riegel has made a number of arguments in support of its motion to dismiss, to which we now turn.

### Statute of Limitations

■ According to 15 U.S.C. § 15b,

[a]ny action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued.

The Supreme Court has recognized various grounds for allowing antitrust lawsuits to be brought more than four years after the events which initially create a cause of action. Thus, if, when a defendant's antitrust act originally occurred, the plaintiff's damages were speculative or unprovable, suit may be brought more than four years

after the antitrust act. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 339–40, 91 S.Ct. 795, 806–07, 28 L.Ed.2d 77 (1971). Additionally, if a plaintiff refrains from suit during the limitations period because of inducement by the defendant, *Glus v. Brooklyn Eastern Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), or because of fraudulent concealment, *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), the limitations period will be tolled. *See also, Allis-Chambers Mfg. Co. v. Commonwealth Edison Co.*, 315 F.2d 558 (7th Cir.1963). More recently, the Ninth Circuit has developed an equitable tolling doctrine to toll the statute of limitations, *Mt. Hood Stages v. Greyhound Corp.*, 616 F.2d 394 (9th Cir.1980), *cert. denied*, 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980).

Riegel claims that Brunswick alleges no actionable anticompetitive conduct by Riegel within the four years preceding the complaint, which was filed on July 15, 1982. In response, Brunswick makes three arguments in an effort to toll the statute of limitations: (1) equitable tolling; (2) fraudulent concealment; and (3) the speculative nature of Brunswick's damages at the time of violation. We will consider each of these arguments in turn.

### Equitable Tolling

■ In *Mt. Hood Stages v. Greyhound Corp.*, 616 F.2d 394 (9th Cir.1980), *cert. denied*, 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980), the Ninth Circuit held that the plaintiff's resort to an administrative proceeding with the Interstate Commerce Commission, in which plaintiff objected to Greyhound's acquisition of other bus companies, tolled the statute of limitations for purposes of a subsequent antitrust action against Greyhound.[2] Central to the holding in *Mt. Hood* was the fact

---

**2.** Prior to the Ninth Circuit's holding, the Supreme Court had remanded the case to the Ninth Circuit to consider whether the statute of limitations was tolled by equitable principles. *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 337 n. 21, 98 S.Ct. 2370, 2378 n. 21, 57 L.Ed.2d 239 (1978). In his concurring opinion,

Chief Justice Burger declared that equitable tolling was particularly appropriate in the context of 15 U.S.C. § 15b, since the addition of that section was "essentially a 'procedural' change." *Id.* at 338, 98 S.Ct. at 2379 (1978) (Burger, Ch.J., concurring).

that a key issue raised by the plaintiff's antitrust suit involved matters within the Interstate Commerce Commission's primary jurisdiction. *Mt. Hood,* 616 F.2d at 397–98. Thus, prior to their consideration by a court, the Commission was required to resolve these issues.

In the instant case, Brunswick asserts that the patent interference proceeding in the present case suspended the statute of limitations. However, patent validity is neither a matter within the primary jurisdiction of an administrative agency nor a public issue of regulatory concern. *Johnson & Johnson v. Wallace A. Erickson & Co.,* 627 F.2d 57, 61–62 (7th Cir.1980). The factual adjudications of the Patent Office, moreover, are not necessarily conclusive. *Id.* The *Mt. Hood* Court's careful balancing of purposes behind the Clayton Act and the Interstate Commerce Act renders it distinguishable from the present case, and we decline to apply the equitable tolling doctrine. *Cf., Corson v. First Jersey Securities, Inc.,* 537 F.Supp. 1263 (D.N.J.1982) (SEC investigation does not toll statute of limitations on private enforcement action).

### Fraudulent Concealment

In an effort to fall within the fraudulent concealment exception to the statute of limitations, Brunswick claims that the first evidence that Riegel's 1970 patent application was fraudulent appeared during a 1980 deposition. Prior to that date, Brunswick claims that it reasonably relied upon Rie-

gel's denial of wrongdoing and Riegel's claim that it had developed an independent invention.

█ A party seeking the benefit of rules in avoidance of statutes of limitations has the burden of proof to establish his or her entitlement to such rules. *Akron Presform Mold Co. v. McNeil Corp.,* 496 F.2d 230, 233 (6th Cir.1974), *cert. denied,* 419 U.S. 997, 95 S.Ct. 310, 42 L.Ed.2d 270 (1974). Thus, to invoke the fraudulent concealment doctrine, Brunswick must be able to produce evidence that Riegel concealed the basic facts disclosing the existence of a cause of action, and that Brunswick remained in ignorance of those facts through no fault of their own. *Baker v. F & F Investment,* 420 F.2d 1191, 1199 (7th Cir.1970), *cert. denied,* 400 U.S. 821, 91 S.Ct. 42, 27 L.Ed.2d 49 (1970). Due diligence by Brunswick in attempting to discover the relevant facts is therefore required. *Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.,* 546 F.2d 570, 574 (4th Cir.1976). Particularity in pleading fraudulent concealment has also been required. *Rutledge v. Boston Woven Hose & Rubber Co.,* 576 F.2d 248, 250 (9th Cir.1978); *Laundry Equipment & Sales Corp. v. Borg-Warner Corp.,* 334 F.2d 788 (7th Cir. 1964).

█ In paragraph 24 of its complaint, Brunswick sets forth a detailed explanation of why it did not learn of Riegel's alleged fraudulent conduct until October, 1977.[3]

---

**3.** According to ¶ 24,

Not until October, 1977 did BRUNSWICK, in the course of the Patent Office Interference proceedings, become aware that RIEGEL's patent and RIEGEL's defense in the interference proceedings were not merely the result of an erroneous good faith claim of independent development, but that RIEGEL had willfully and tortiously engaged in a scheme to misappropriate to itself BRUNSWICK's Blending Process by fraudulently applying for a patent and continuing the fraud by its conduct in the interference proceeding. BRUNSWICK learned at this time that RIEGEL, and its attorneys, at all times relevant hereto knew or should have known that RIEGEL had not in fact developed any new advancement of technology in the Blending Process, other than that which BRUNSWICK had disclosed

to RIEGEL in the course of the confidential relationship; and that the purported inventors had made no contribution toward the invention of the blending process which RIEGEL claimed in its patent application, but merely had pirated and copied that which had been disclosed to RIEGEL by BRUNSWICK in the course of the confidential relationship. BRUNSWICK had no reasonable means of learning of RIEGEL's fraudulent and willful misconduct until the following incidents occurred in the course of the prosecution of now pending Patent Interference No. 98,935 which relates to RIEGEL's "Antistatic Yarn Production" Patent (Exhibit A):

(a) In or about October, 1977 BRUNSWICK was informed that RIEGEL obtained all of its information concerning the blending of antistatic yarn from BRUNSWICK in 1968, and

But October, 1977, is more than four years prior to the filing of the complaint in the present matter. From the complaint, it is apparent that Brunswick either knew or could have discovered, through reasonable diligence, the facts upon which its cause of action is premised in 1977.[4] Where a complaint reveals that certain claims are barred from recovery by limitations, they may be disposed of on a motion to dismiss. *Baker v. F & F Investments,* 420 F.2d 1191, 1198 (7th Cir.1970), *cert. denied,* 400 U.S. 821, 91 S.Ct. 42, 27 L.Ed.2d 49 (1970); *Kincheloe v. Farmer,* 214 F.2d 604, 605 (7th Cir.1954), *cert. denied,* 348 U.S. 920, 75 S.Ct. 306, 99 L.Ed. 721 (1955). As a result, Brunswick's complaint itself indicates that the doctrine of fraudulent concealment is unavailable as a means of tolling the statute of limitations.

### Speculative Damages

■ According to Brunswick, its damages were speculative and unprovable at the time of Riegel's initial violation, and therefore the statute of limitations does not bar this action. Brunswick claims that it intended to enter into a new market licensing textile companies with its blending pro-

that RIEGEL knew and always had known that the purported inventors of the RIEGEL "Antistatic Yarn Production" Patent (Exhibit A) made no independent invention.

(b) In October, 1977 BRUNSWICK was also informed that in November, 1969, after BRUNSWICK had taught RIEGEL the Blending Process, top level management officials at RIEGEL instructed other members of RIEGEL management and staff to do whatever they could to obtain a patent on BRUNSWICK's Blending Process in order to exclude RIEGEL's competitors in the manufacture of antistatic fabric.

(c) In August, 1981, BRUNSWICK was informed that everything that the plant foreman of RIEGEL, who was in charge of blending metal fibers and textile fibers from 1968–74, knew about the manufacture of antistatic fibers had been taught to him by BRUNSWICK personnel, and that no engineers or technicians from RIEGEL had ever suggested or implemented any modification in the BRUNSWICK Blending Process.

(d) In September, 1981, BRUNSWICK learned that, although RIEGEL's employee Goodbar had represented to the Patent Office in Patent Interference No. 99,227 that the

cess, but that it was prevented from doing so when Riegel obtained its patent. Because antistatic yarn was a new concept in 1972, with no predictability as to its market success, Brunswick asserts that to estimate a market and royalty income in 1972 would have been speculative. Therefore, Brunswick claims that its cause of action did not accrue until 1980, when deposition testimony allegedly confirmed Brunswick's suspicion that Riegel stole Brunswick's invention.

In *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed. 77 (1971), the Supreme Court held that an antitrust plaintiff may recover damages occurring within the statutory limitations period that are the result of conduct prior to that period if, at the time of the conduct, these damages were speculative or incapable of proof. *Id.* at 338–42, 91 S.Ct. at 806–08. We do not believe that Brunswick's damages were speculative in 1972 when the patent was issued to Riegel. The relief Brunswick seeks includes an assignment of Riegel's patent and the right to exploit the *entire market* for products produced by the blending process. Such

purported invention of the antistatic yarn and blending process at RIEGEL was not made until January of 1970, Goodbar already had antistatic fabric in his possession in July of 1969, obviously made from yarn using the BRUNSWICK Blending Process.

4. As another possible basis for our holding, we note that Brunswick certainly knew the nature of its blending process as early as 1973. It had previously taught the process to Riegel. Brunswick, moreover, is charged with knowledge of the process upon which Riegel obtained its patent. *Sontag Chain Stores Co. v. National Nut Co.,* 310 U.S. 281, 295, 60 S.Ct. 961, 967, 84 L.Ed. 1204 (1940).

Riegel's patent was issued in 1972. Brunswick thus may have known of its cause of action prior to 1977. The fact that Riegel allegedly rejected accusations of its culpability would not automatically toll the statute of limitations; rather, a plaintiff's reliance upon such a denial must be reasonable in order to assert fraudulent concealment. *Rutledge v. Boston Woven Hose and Rubber Co.,* 576 F.2d 248, 250 (9th Cir. 1978). Whether any reliance on the part of Brunswick was reasonable is an issue upon which we express no opinion.

damages were not speculative or incapable of proof in 1972. Moreover, the *Zenith* exception to statute of limitations operates to toll the statute of limitations where damages are speculative, and not where the existence of the cause of action itself was speculative. *Akron Pressform Mold Co. v. McNeil Corp.*, 496 F.2d 230, 234 (6th Cir. 1974). As a result, the *Zenith* exception to the statute of limitations is inapposite.

### Continuing Antitrust Violations

■ Brunswick also claims that Riegel's wrongful appropriation and use of Brunswick's blending process constitutes a continuing antitrust violation, which allows Brunswick to sue for damages sustained in the four-year period preceding the filing of this suit. In response, Riegel asserts that the fraudulent procurement of a patent cannot constitute a violation of the antitrust laws; thus, Riegel's conduct cannot be classified as a continuing antitrust violation.

In *Walker Process Equipment v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), the Supreme Court recognized that the enforcement of a patent procured by intentional fraud on the patent office may violate § 2 of the Sherman Act. *Id.* at 174, 86 S.Ct. at 349. According to Brunswick, Riegel's conduct is equivalent to enforcement of the patent.[5] However, absent allegations that Riegel enforced its patent by exclusionary infringement suits or threats of suit, in addition to fraudulently procuring the patent, Brunswick's claim is not actionable under the antitrust laws. *Id.; GAF Corp. v. Eastman Kodak*, 519 F.Supp. 1203, 1234 (S.D.N.Y.1981); *Struthers Scientific and International Corp. v. General Foods Corp.*, 334 F.Supp. 1329, 1331–32 (D.Del.1971), *accord, Oetiker v. Jurid Werke GMBH*, 671 F.2d 596 (D.C.Cir. 1982). Riegel procured the patent in 1972;

Brunswick alleges no exclusionary infringement suits, or threats of any such suits on the part of Riegel subsequent to that time which might constitute continuing antitrust violations.

———

Accordingly, because we conclude that Counts III, IV and V of Brunswick's complaint are barred by the statute of limitations and fail to state a claim for a continuing antitrust violation, these counts are dismissed.[6] The pendent state law claims in Counts I, II and VI are also dismissed. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). It is so ordered.

---

5. Brunswick cites Riegel's contesting of Brunswick's rights in the patent interference proceedings, Riegel's issuance of a license for the process patent and technology to another firm, and Riegel's citation in advertising of its patent in support of this proposition.

6. Our resolution of the present matter renders unnecessary a discussion of Riegel's additional arguments in support of dismissing Counts III, IV and V.