## ROYAL TYPEWRITER CO., Inc. v. REMINGTON RAND, Inc.
### Civ. No. 2031.

District Court, D. Connecticut.

Oct. 3, 1947.

Judgment Affirmed May 21, 1948.

George E. Faithfull, and Davis, Hoxie & Faithfull, all of New York City, and Curtiss K. Thompson and Thompson, Weir & MacDonald, all of New Haven, Conn., for plaintiff.

Edwin T. Bean and Bean, Brooks, Buckley & Bean, all of Buffalo, N. Y., and Henry E. Rockwell and Rockwell & Bartholow, all of New Haven, Conn., for defendant.

SMITH, District Judge.

Plaintiff, owner of the Woodfine patent No. 1,916,905 for an improvement in means of setting margins on typewriters, brings this action against defendant, claiming that a device labelled by defendant its "Keyboard Margin Control" infringes three claims of the Woodfine patent, which are as follows:

"Claim 1. In margin regulator mechanism the combination with a typewriter including a movable carriage and a fixed stop post, of a rack bar mounted on the carriage, a pair of stops disposed for longitudinal sliding movement on the rack bar, an oscillatory catch member mounted on each stop, means attached to the stops adapted to releasably adjust the catch members to a stop securing position and tending to slide the stops in one direction on the rack bar, movable trip members operable to trip the catch members and release the margin stops, and operating keys attached to the said trip members whereby the latter may be actuated from a remote position.

"Claim 2. In margin regulator mechanism the combination with a typewriter including a movable carriage and a fixed stop post, of a rack bar mounted on the carriage, a pair of stops disposed for longitudinal sliding movement on the rack bar, an oscillatory catch member mounted on each stop, means attached to the stops adapted to releasably adjust the catch members to a stop securing position and tending to slide the stops in opposite directions on the rack bar, a pair of oscillatory trip bars engageable with the catch

members, means normally retaining the trip bars in elevated non-tripping position, and keys attached to each trip bar and extending therefrom whereby the trip bars may be actuated to a stop releasing position from a remote operating position.

"Claim 3. In a margin regulator for typewriters the combination with a stop post, a carriage movable with respect to the stop post, a rack bar mounted on the carriage, a pair of stops slidable on the rack bar, and rack engaging catch members attached to each stop to normally secure the stops in set position on the rack bars, of spring mechanism tending to slide the stops toward one another, a pair of trip members operable to adjust the catch members to stop releasing positions, and extension keys attached to the shift members for actuating the latter from forwardly disposed positions."

Both the defendant's device and that of Woodfine provide for setting of margin stops by controls on the front of the machine easily accessible to the operator. Both are designed for use on the so-called open-face machine, the type of machine in general use which carries the margin stops and the bar on which they are mounted to the rear of the machine.

Margin stops, on a bar or rack mounted on the carriage, halt the movement of the carriage by contact with a fixed post mounted on the frame, or, if the rack and stops are mounted on the frame, by contact with a fixed post mounted on the carriage.

The width of each margin is controlled by sliding the corresponding stop along the rack to the desired position and allowing a tooth on the stop, held against the rack by a spring, to engage an indentation between the teeth on the rack. At one stage in the development of margin control this was done by hand, an awkward operation where the stop mechanism was to the rear of the machine. Later several methods were devised of making the setting by remote control, moving the carriage to bring the stop in position opposite a member which would hold it fixed while allowing the rack to move, disengaging the stop from the rack and engaging it to the holding member, moving the carriage again by hand until the desired position on the rack was opposite the stop, and then disengaging the stop from the holding member and allowing it to engage the rack at the desired position.

None of these methods appears to have been widely used. Woodfine improved these methods by providing a spring and a remote control stop release so that the operator could release the stop without reaching behind the machine, and when the stop was disengaged from the rack the spring would draw the stop against the fixed post. The desired setting could be obtained by moving the carriage to a position corresponding to the desired margin setting, releasing the stop from the rack and allowing the spring to move the stop against the post and there reengage with the rack.

There is no question raised as to the validity of the Woodfine patent.

Nothing in the prior art approaches or suggests Woodfine's spring action.

Springs were used in prior patents to bring the stops back to their last previous setting when they had been temporarily released to allow writing in the previously-used margin. However, the range of movement was small, the purpose was restricted, and the operation does not resemble Woodfine's spring action to bring the stops to the fixed post.

His "motorization" of the stops by means of the spring was a decided improvement in stop-setting mechanisms and most of the manufacturers of typewriters other than the Underwood type have adopted and widely advertized some such "automatic" margin-setting device. The Underwood differs from the so-called open-face machines in that the Underwood carries its bar, rack and margin stops at the front of the machine, which lends itself to easy manual setting of the forward-positioned margin stops and rack.

Defendant denies infringement, however, on the ground that Woodfine's claims are so narrow as not to include the alleged infringing device, particularly in view of the necessity for narrow construction of claims in a patent not a pioneer in a crowded art.

Admittedly the claims do not read literally on the alleged infringing device, for, although the spring action is the same (with the possible exception of Claim 1, which has the stops biased by the spring in "one direction"), Woodfine shows plural trip members to disconnect the stops from the rack and allow the spring to act upon them, while defendant uses a single trip member, which, when operated in one direction, releases one stop, when operated in the other direction releases the other stop.

There is also a question whether the language of the claims on the operating levers and keys for the device can be read to cover the construction of defendant. Defendant breaks the claims down into the following elements:

Claim 1 (Exhibit 4)

In margin regulator mechanism the combination with a typewriter including

1. a movable carriage and

2. a fixed stop post, of a

3. rack bar mounted on the carriage,

4. a pair of stops disposed for longitudinal sliding movement on the rack bar,

5. an oscillatory catch member mounted on each stop,

6. means attached to the stops adapted to

(a) releasably adjust the catch members to a stop securing position and

(b) tending to slide the stops in one direction on the rack bar,

7. movable trip members operable to

(a) trip the catch members and

(b) release the margin stops, and

8. operating keys attached to the said trip members whereby the latter may be actuated from a remote position.

Claim 2 (Exhibit 5)

In margin regulator mechanism the combination with a typewriter including

1. a movable carriage and

2. a fixed stop post, of

3. a rack bar mounted on the carriage,

4. a pair of stops disposed for longitudinal sliding movement on the rack bar,

5. an oscillatory catch member mounted on each stop,

6. means attached to the stops adapted to

(a) releasably adjust the catch members to a stop securing position and

(b) tending to slide the stops in opposite directions on the rack bar,

7. a pair of oscillatory trip bars engageable with the catch members,

8. means normally retaining the trip bars in elevated non-tripping position, and

9. keys attached to each trip bar and extending therefrom whereby the trip bars may be actuated to a stop releasing position from a remote operating position.

Claim 3 (Exhibit 6)

In a margin regulator for typewriters the combination with

1. a stop post,

2. a carriage movable with respect to the stop post,

3. a rack bar mounted on the carriage,

4. a pair of stops slidable on the rack bar, and

5. rack engaging catch members attached to each stop to normally secure the stops in set position on the rack bars of

6. spring mechanism tending to slide the stops toward one another,

7. a pair of trip members operable to adjust the catch members to stop releasing positions, and

8. extension keys attached to the shift members for actuating the latter from forwardly disposed positions.

Defendant admits that some of the elements of each claim are found in the defendant's construction. It denies, however, that the following elements are so found: as to Claim 1, elements 6(b), 7 and 8; as to Claim 2, elements 7, 8 and 9; as to Claim 3, elements 7 and 8.

In Claim 1, element 6(b) calls for means adapted to tending to slide the stops in one direction on the rack bar. This is obviously an error in terminology, intended to read "toward one point" rather than "in one direction". This error was noticed and corrected in the Patent Office on another claim. Anyone skilled in the art must read it as meaning "toward one point" in view of the purpose and drawings of the mechanism, or the claim becomes nonsense.

Element 7 calls for movable trip members, plural while defendant uses only one trip member for the same purpose, operating to (a) trip the catch members and (b) release the margin stops. Defendant's member is the mechanical equivalent of Woodfine's members, for it pivots the catch member out of contact with the rack teeth in the same manner as Woodfine, releasing the stop to slide on the rack bar. One surface of the single member operates one stop catch, another surface the other, while Woodfine uses a single surface of each of two separate bars.

Element 8 calls for operating keys attached to the trip members whereby the latter may be actuated from a remote position.

Defendant's operating keys are not rigidly affixed to the trip member, but are so designed that their operation forces into contact with the trip member a device for pushing it up or down. Regardless of any firm union or "attachment" the keys perform substantially the same function in substantially the same manner and must be held mechanically equivalent to the construction of the patent.

In Claim 2, "A pair" of oscillatory trip bars is called for in element 7. The same comment applies as to the plural members in element 7, Claim 1.

Element 8, Claim 2, calls for means normally retaining the trip bars in elevated non-tripping position. Non-tripping position for the single bar of defendant is intermediate rather than elevated. Substantially, function, principles of operation, and means are the same. The tripping surface of the bar is brought in contact with a corresponding portion of the detent to effectuate the tripping and allow the stop to be moved by the spring toward the fixed post, by operating one of the keys. On release of the key, similar means in each device return the bar to non-tripping position.

Element 9, Claim 2, again includes keys "attached" to each trip bar, and a plurality of trip bars. The same comment applies as to element 8, Claim 1.

Element 7, Claim 3, calls for a pair of trip members operable to adjust the catch members to stop releasing positions. Again we must find defendant's single trip member the equivalent of the pair of the patent.

Element 8, Claim 3, again calls for keys "attached" to the shift members. It is agreed that "shift" should be read "trip". The same comment applies as to element 8, Claim 1, and element 9, Claim 2.

■ As so often in patent cases, our question is whether plaintiff has established that defendant's device is a mechanical equivalent [1] of plaintiff's or whether the defendant can distinguish the construction of its device from the strict language of the claims and prevail on the rule that the claims bound the limits of the invention and anything not included in the claims may be considered either prior art or a gift to the public by the inventor.[2]

■ As Judge Hand has pointed out, it is impossible to obtain an exact yardstick from the cases, for the latitude to be allowed the inventor varies greatly with the state of the prior art and the magnitude of the inventor's contribution to progress.[3]

---

[1] Union Paper–Bag Mach. Co. v. Murphy, 1877, 97 U.S. 120, 125, 25 L.Ed. 935, " * * * one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result."

[2] McClain v. Ortmayer, 1891, 141 U. S. 419, 12 S.Ct. 76, 35 L.Ed. 800; Miller v. Bridgeport Brass Co., 1881, 104 U.S. 350, 26 L.Ed. 783; Ely Norris Safe Co. v. Mosler Safe Co., 1933, 2 Cir., 62 F.2d 524.

[3] Gibbs v. Triumph Trap Co., Inc., 1928, 2 Cir., 26 F.2d 312, 314.

"It is settled law, and it is good sense, that one does not escape infringement by combining into one element what a claim specifies as two, provided that the single element performs the function of both in the same way. Bundy v. Detroit Time-Register Co., 6 Cir., 94 F. 524, 538; Pedersen v. Dundon, 9 Cir., 220 F. 309; Proudfit, etc., Co. v. Kalamazoo, etc., Co., 6 Cir., 230 F. 120, 138, 139. In Underwood Typewriter Co. v. Royal Typewriter Co., 2 Cir., 224 F. 477, 479,

224

Here the patent can hardly be called a pioneer. Typewriters had been in use for some seventy years. Margin stops were old in the art; manual adjustment of the stops likewise. There had been some progress, apparently without commercial success, in remote control devices for setting the stops without laying hand on the stops themselves. Woodfine, however, first made them practical by his spring and stop-detent trip combination to partially animate the stops. It was a substantial advance in the art. Indeed, no question is raised as to its having involved patentable invention on Woodfine's part. He should, therefore, be entitled to a fairly broad range of equivalents.

Defendant contends that in a crowded art the patentee must be held strictly to the wording of the patent. It would seem, however, that confining him to plural trip members would be a complete denial of the doctrine of equivalents. The single bar performs precisely the same function as the two bars of Woodfine, freeing the stops to move on the rack under the traction of the spring, and performs it in precisely the same way, by pressing on a similar structure of the detent to pivot its tooth out of engagement with the teeth of the rack bar.

It is true that this is an improvement patent and that plaintiff itself, although it purchased the patent ten years ago when four years of its term had run, has not followed it in all its details in its own construction, using keys above the ends of the rack bar rather than forwardly disposed keys, but it is entitled to some range of equivalents, and within that range falls the defendant's construction, including the tripping devices and its key "attachment" therewith.

---

we declined to apply this doctrine in the case of an overcrowded art, where apparently it was necessary to restrict the claims if they were to be valid at all. Courts do indeed treat the language of claims plastically, now stretching to save the whole scope of the invention, now squeezing to limit the claim so that it can survive. There are no absolutes; when justice requires, it is a question of filling the language as full as it will bear without bursting, or of pressing it so long as it will not quite break,

---

though of course the words have their limits. When a patentee prescribes two elements in a claim he means that each will contribute its share of the result, but their duality is not important. When the two are incorporated into a single physical element, it remains as much a means to the first result and a means to the second, as though it were in two parts. Were this not true, any ingenious mechanic might pick an inventor's brains at pleasure."