**ROYAL-McBEE CORPORATION,**
**Plaintiff-Appellee,**

**v.**

**SMITH-CORONA MARCHANT, INC.,**
**Defendant-Appellant.**

**No. 221, Docket 26415.**

United States Court of Appeals
Second Circuit.

Argued March 23, 1961.

Decided Aug. 31, 1961.

As Amended on Denial of Rehearing
Oct. 26, 1961.

George E. Faithfull, New York City Davis, Hoxie, Faithfull & Hapgood and John Hoxie, New York City, on the brief), for plaintiff-appellee.

Theodore R. Simonton, Cazenovia, N. Y., for defendant-appellant.

Sullivan & Cromwell, New York City, for defendant-appellant, on rehearing.

Before LUMBARD, Chief Judge, MOORE, Circuit Judge, and BRUCHHAUSEN,* District Judge.

LUMBARD, Chief Judge.

This is an appeal from a final judgment in a patent case, which awarded damages and certain attorneys' fees to the plaintiff. The case turns on the rights arising out of Woodfine patent No. 1,916,905, relating to an automatic margin regulator for typewriters. The patent was issued on July 4, 1933, and the inventor assigned all right, title and interest in it to the plaintiff on December 7, 1937, for a single payment of $10,000. Since that time the device has been embodied in the plaintiff's "Magic Margin" typewriters which have gained considerable commercial success.

The patent has been the subject of litigation which has reached this court in the past, and full details of the plaintiff's automatic margin setting apparatus and claims made in the letters patent are set forth in Judge Smith's opinion in Royal Typewriter Co. v. Remington Rand, Inc., D.C.D.Conn.1947, 76 F.Supp. 220, and in this court's affirmance at 2 Cir., 168 F. 2d 691, certiorari denied 1948, 335 U.S. 825, 69 S.Ct. 50, 93 L.Ed. 379. The present suit was instituted on March 7, 1947 as a companion case to the action brought by the plaintiff against Remington Rand, Inc., on the same day, for infringement of the same patent. Interlocutory decrees for the plaintiff were entered on both suits on October 3, 1947, but only Remington Rand appealed at that stage. The present appellant awaited the outcome of the Remington Rand appeal on the theory that that case would, to a large degree, be determinative of the issues which could be raised in the companion suit. Several years after the judgment was affirmed and certiorari was denied by the Supreme Court, the Remington Rand litigation, which had been referred to a master for an accounting, was settled by agreement of the parties. Smith-Corona refused to accept the same terms of settlement and proceeded to an accounting. This is an appeal from the final order of the district court which awarded the plaintiff a royalty of $1.09 on each of 274,775 infringing typewriters sold by Smith-Corona between the date on which the complaint in this action was served on it and the

* Sitting by designation.

date on which the Woodfine patent expired, plus interest from the date on which the Master's report was filed. In addition, and in accordance with the terms of its interlocutory decree, the district court assessed against the defendant-appellant costs and attorneys' fees arising out of the reference to the Master. Thus, more than fourteen years after suit was begun and more than ten years after the patent expired, we are asked on this appeal to determine the rights arising out of the alleged infringement.

(1) *Validity of the patent*—Judge Smith's decision of October 3, 1947, noted that there was "no question raised as to the validity of the Woodfine patent." [76 F.Supp. 221.] In this case, as in the companion Remington Rand case, the defendant conceded in the district court that the patent was valid; the nub of the defense was that there had been no infringement. On June 28, 1951, however, relying on the decisions of the Supreme Court in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, and Crest Specialty v. Trager, 1951, 341 U.S. 912, 71 S.Ct. 733, 95 L.Ed. 1349, Smith-Corona moved in the district court for leave to file an amended counterclaim praying for a declaratory judgment of the patent's invalidity for want of invention. This motion was denied by Judge Smith on the ground that the Supreme Court decisions did not warrant a reopening of this case, and an appeal from the denial was dismissed by this court.

On the present appeal Smith-Corona renews its attack on the validity of the patent. It argues that the Woodfine mechanism was anticipated by the prior art, particularly by Ramus patent No. 1,594,379; Champion patent No. 752,885; and Smith patent No. 1,561,494. Since these letters patent were introduced in the district court as evidence relevant to the issue of infringement, we have them before us on this appeal. Thus, we are not faced with a situation such as that presented to us on the appeal in the Remington Rand case. There it was felt that despite the Supreme Court's instruction in Sinclair & Carroll Co. v. Interchemical Corp., 1945, 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644—that it "will usually be the better practice * * * [to inquire] fully into the validity" of the patent before considering whether or not it has been infringed—the concession of validity by the defendant should be accepted. 168 F.2d at pages 691–692. Judge Learned Hand's reason for not first considering validity in Remington Rand was that the defendant's failure to challenge the patent and introduce evidence of the prior art resulted in the court's having "no adequate means to decide the issue." But when, as here, the alleged prior art is in the record, and the defendant attacks the patent on appeal, we believe it best to decide first whether the evidence in the record supports the claim that the patent is invalid.

We hold that none of the three patents cited, nor a combination of any or all of them, anticipated the Woodfine device. The Ramus patent discloses an automatic margin control, but its operation is manual and does not depend on a spring mechanism. Both the Champion and Smith patents employ springs to return the margin stop to its original position after it is temporarily released to permit the type to run into the margin. But the position and function of the spring in each of these is substantially different from the position and function of the spring in the Woodfine patent. No earlier patent has been cited which anticipated the use of a spring to connect the stop units controlling the left- and right-hand margins and thus tend to draw them towards one another along a "rack bar." It is this idea which forms the basis of the plaintiff's claim and which was incorporated into its typewriters as the "Magic Margin" device.

(2) *Infringement*—We held in the Remington Rand case that the Woodfine patent because of the doctrine of equivalents was infringed by a device

which substituted a single dual-acting trip member for Woodfine's two single-acting trip members. Smith-Corona's automatic margin-setting device also depends on the spring mechanism, and it is similar to the Remington Rand apparatus in that it too uses a single trip member which releases one stop when it is swung in one direction and releases the other when it is swung in the opposite direction. In these respects, therefore, the Smith-Corona device does "the same work in substantially the same way, and accomplish[es] substantially the same result" as does the Woodfine mechanism. See Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097, quoting from Machine Co. v. Murphy, 1877, 97 U.S. 120, 125, 24 L.Ed. 935. Consequently, it comes within the range of protected equivalence to which the Woodfine patent is entitled under this court's decision in Remington Rand.

Smith-Corona argues that the means it employs to actuate the dual-acting trip member sufficiently distinguishes its apparatus from the Woodfine patent so as to permit its use. Whereas the plaintiff's device comprises, as claim 3 of the Woodfine patent discloses, "extension keys attached to the shift members for actuating the latter from forwardly disposed position," Smith-Corona's machine uses a single crank handle or lever which can be moved up or down to rock the trip member in one direction or the other. But we would be making a hollow shell of the doctrine of equivalents were we to assign any merit to this claim. The significant contribution made by the Woodfine patent lay in its disclosure of the spring mechanism and the trip member. There may be many conceivable ways of actuating the trip bars. It would surely be unjust to hold that anyone who discovers some new technique may make free use of what is otherwise considered novel enough to be protected. Since the Woodfine patent was adequate to apprise Smith-Corona that its minor modification would be within the range of protected equivalents, plaintiff was not required to apply for a reissue, and Smith-Corona cannot rely upon the doctrine of intervening rights. See Sontag Chain Stores Co. v. National Nut Co. of California, 1940, 310 U. S. 281, 60 S.Ct. 961, 84 L.Ed. 1204. The fact that Smith-Corona's margin-setting device was produced under a patent owned by it, Fox No. 2,135,-177, may give rise to a presumption of validity. E. g., Georgia-Pacific Corp. v. United States Plywood Corp., 2 Cir., 258 F.2d 124, 132–133, certiorari denied 1958, 358 U.S. 884, 79 S.Ct. 124, 3 L.Ed. 2d 112. But we agree with the district judge that the presumption "is outweighed by the proof here." Having borrowed the essence of Woodfine's invention, Fox's patent cannot stand simply because it adds some minor variations.

(3) *Laches and estoppel*—About one year after the plaintiff began marketing its typewriter with the "Magic Margin" in October 1938, the defendant introduced its model with the infringing "Automatic Margin Set." Both parties then continued to use their margin setting devices in practically all of their standard and office typewriters. The plaintiff requested its attorneys to investigate the possibility that Smith-Corona's machines were infringing the Woodfine patent or Hart No. 2,208,367, which had also been assigned to the plaintiff and which closely resembled the typewriter model then being produced by Royal. The plaintiff's attorneys recommended that Royal not charge Smith-Corona with infringing the Woodfine patent; but a letter was sent to Smith-Corona on November 7, 1940, notifying it of its alleged infringement of the Hart patent. Smith-Corona's attorneys replied on November 27, 1940, denying that the current model of L. C. Smith machines infringed the Hart patent. After inspecting a new L. C. Smith typewriter, Royal's attorneys replied, in a letter headed "Hart Patent 2,208,367," noting that substantial changes had been made in the construction of the margin stop setting mechanism. The letter concluded, "In view of these changes, we now feel that nothing

further will be done with respect to L. C. Smith machines which embody this changed margin stop construction." The defendant was given no further indication of any intention on the part of Royal to contest the use of the margin-setting device in the defendant's typewriters until the complaint in this action was served upon it on March 11, 1947.

After filing its answer, which alleged that the plaintiff had been guilty of laches and was estopped, by reason of the letter sent by its attorneys, to enforce any rights against the defendant, Smith-Corona moved for judgment on the pleadings. Royal then moved to strike the defenses of laches and estoppel. Judge Smith denied the motion for judgment on the pleadings and granted the cross-motion to strike the defenses of laches and estoppel. He held that by failing to sue, Royal had forfeited its rights to an accounting and damages for past infringement, but that its rights to prevent future infringement were unaffected. We agree.

The principle underlying the distinction between past and future infringement was formulated as long ago as 1888 in Menendez v. Holt, 128 U.S. 514, 524–525, 9 S.Ct. 143, 145, 32 L.Ed. 526, in the words of Chief Justice Fuller:

> "So far as the act complained of is completed, acquiescence may defeat the remedy on the principle applicable when action is taken on the strength of encouragement to do it; but so far as the act is in progress and lies in the future, the right to the intervention of equity is not generally lost by previous delay, in respect to which the elements of an estoppel could rarely arise. * * * Delay in bringing suit there was, and such delay as to preclude recovery of damages for prior infringement; but there was neither conduct nor negligence which could be held to destroy the right to prevention of further injury."

The defendant maintains nonetheless that a patentee's laches for more than the analogous statutory limitation period bars all relief and cites Gillons v. Shell Co., 9 Cir., 1936, 86 F.2d 600, certiorari denied 1937, 302 U.S. 689, 58 S.Ct. 9, 82 L.Ed. 532, in support of this proposition. The defendant contends that we should adopt the rule of the Ninth Circuit in the Gillons case rather than that of the Fifth Circuit, as announced in Shaffer v. Rector Well Equipment Co., 5 Cir., 1946, 155 F.2d 344, 346, in which it was said that passage of time alone would not bar a suit, but that "there must be other considerations that would make it inequitable for the suit to be prosecuted." We do not find the holdings of these cases to be inconsistent. In Gillons, the plaintiff asked an accounting for past infringement; in Shaffer, the plaintiff sought an injunction against future infringement. Both cases therefore follow the distinction drawn in Menendez v. Holt, supra.

The difference between relief for acts which have already been committed and for conduct threatened in the future was noted in the Gillons case itself. See 86 F.2d at page 608. Accordingly we agree with Judge Smith that the delay in bringing suit did not bar the plaintiff altogether although it did prevent him from recovering for such infringement as occurred before the complaint was served. See Simpson v. Newport News Shipbuilding & Dry Dock Co., D.C.S.D. N.Y.1920, 18 F.2d 318, affirmed, 2 Cir., 1927, 18 F.2d 325.

Delay alone might be a complete bar if, in reliance upon it, the alleged infringer has so far changed its position as to make relief *in futuro* inequitable. But Judge Smith found here that the reliance consisted solely of advertising expense and increased publicity, so that the damage which would have been caused by an injunction would have primarily affected the defendant's prestige. We agree with him that this damage would not have justified denying all relief to the plaintiff for the remaining term of the patent.

But the defendant contends that it was misled by more than mere acquiescence,

that the letter sent to it by the plaintiff's attorneys amounted to a misrepresentation which would support an estoppel. It might be argued that a court should bar the patentee who actively misrepresents his intentions if the defendant has acted at all in reliance on the representation although such reliance would be insufficient had the patentee merely been silent. We think, however, that more active participation by the patent-holder in creating a misleading appearance should not bar the plaintiff altogether, but that it should be one factor in the district court's choice of a proper remedy. Consequently we agree entirely with Judge Smith's constructive approach towards this difficult matter.

In formulating his interlocutory decree, Judge Smith gave great weight, as his memorandum of December 16, 1947, attests, to the fact that the plaintiff "led defendants by its assurances * * to continue to emphasize the value of the device in advertising its machine for sale in competition with the plaintiff and others." He concluded, "The assurances to defendant, while not causing such disastrous results as to justify refusal of all relief on grounds of estoppel, undoubtedly are responsible for a great portion of the expense, embarrassment and loss of prestige now facing the defendant, and lead the Court to deny injunctive relief upon the payment of a fair royalty for continued use of the device during the relatively short period remaining of the life of the patent." We find this flexible approach towards a difficult problem of balancing equities in patent litigation most desirable, and we think the remedy was fully warranted by the facts of this case.

(4) *Attorneys' fees*—Smith-Corona also appeals from the portion of the final judgment of the district court which granted the plaintiff $60,338 as attorneys' fees traceable to the reference to the Master. The interlocutory decree, from which no appeal was taken by Smith-Corona, provided:

"5. Plaintiff shall recover of defendant its costs to date of this action to be taxed. Costs of the reference to the Special Master and attorneys' fees on said reference shall be borne by defendant."

After the Master had submitted his report, the defendant moved to amend the decree to strike out the words "and attorneys' fees on said reference." The motion was denied in a memorandum in which Judge Smith explained that "having denied injunctive relief on defendant's plea of undue hardship [the Court] substituted therefor the provision for reasonable royalty and reference, and incorporated on its own motion the requirement that costs and attorneys' fees on the reference be borne by the defendant."

Although the statute in force at the time when the interlocutory decree was entered, 35 U.S.C. § 70 (1946 ed.), provided that attorneys' fees might be awarded to the prevailing party "on any patent case," it was so construed as to be limited only to the most extreme and aggravated situations. E. g., Phillips Petroleum Co. v. Esso Standard Oil Co., D.C.D.Md., 91 F.Supp. 215, affirmed 4 Cir., 1950, 185 F.2d 672. The Reviser's Note to the present statute, which allows a judgment for attorneys' fees only "in exceptional cases," 35 U.S.C. § 285, states that these words have been added "as expressing the intention of the present statute as shown by its legislative history and as interpreted by the courts." It is agreed here that the defendant's claim was not so devoid of merit as to make this an "exceptional" case in which an award of attorneys' fees would be appropriate.

The plaintiff contends, however, that the award was a proper exercise of equitable discretion; that in exchange for the freedom to use the margin-setting device for the remaining life of the Woodfine patent the defendant was obliged to pay not only a royalty but also all legal expenses which were attributable to determining what the royalty figure should be. We have held, however, that the plaintiff's actions in misleading the defendant were such that the relief granted by the district court was the

only kind that was permissible, and that because of the defendant's reliance on the representations of the plaintiff's attorneys, it would have been an abuse of discretion had Judge Smith issued an injunction. My brothers are of the opinion that consequently it was an abuse of discretion for the district judge to make denial of an injunction contingent on the defendant's payment of attorneys' fees on the reference to the Master. The writer disagrees and is of the view that Judge Smith's ruling on the attorneys' fees was well within his discretion. Accordingly, we reverse that part of the judgment which grants the plaintiffs their attorneys' fees.

The judgment is affirmed except insofar as it awards to the plaintiff $60,338 for its attorneys' fees on the reference to the Special Master. The award of attorneys' fees is reversed and the judgment is to be amended to strike said award.